IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANCISCO JAVIER GALLEGOS VALENZUELA, | ) ) ) | |
| Petitioner, | ) ) | No. 25-cv-13499 |
| v. | ) ) | Judge Andrea R. Wood |
| SAM OLSON, et al., | ) ) | |
| Respondents. | ) ) | |

## MEMORANDUM OPINION

Petitioner Francisco Javier Gallegos Valenzuela, a citizen of Mexico, entered the United States without inspection in 2004 and has subsequently resided in the country for over 21 years. On November 4, 2025, Gallegos Valenzuela was arrested and taken into custody by U.S. Immigration and Customs Enforcement ("ICE"). In line with a recent decision issued by the Board of Immigration Appeals ("BIA"), *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025), Gallegos Valenzuela was detained without the opportunity to seek release by means of an individualized bond hearing before an Immigration Judge. For that reason, Gallegos Valenzuela filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Dkt. No. 1), asking this Court to order his immediate release from detention or that he be afforded a bond hearing. (Dkt. No. 1.) For the reasons that follow, Gallegos Valenzuela's petition is granted.

## BACKGROUND

Gallegos Valenzuela is a citizen of Mexico who entered the United States without inspection and has been present in this country for over 21 years. Prior to his arrest, he resided in Aurora, Illinois, with his five U.S. citizen children. One of those children is a seven-year-old boy who suffers from several medical conditions, including chronic kidney disease, hypothyroidism,

bronchopulmonary dysplasia, acute chronic respiratory failure, left lung hypoplasia, and facial dysmorphia. Due to his conditions, Gallegos Valenzuela's child requires a feeding tube and ventilator therapy at night. And Gallegos Valenzuela and the child's mother are responsible for providing the constant care that their seven-year-old son requires. On November 4, 2025, Gallegos Valenzuela was arrested in Chicago by ICE and taken into custody. That same day, he was issued a Notice to Appear for removal proceedings pursuant to 8 U.S.C. § 1229a. Initially, and at the time he filed his habeas petition, Gallegos Valenzuela was detained at the Broadview Detention Center in Broadview, Illinois, which is located in the Northern District of Illinois. Gallegos Valenzuela was subsequently moved to the Clay County Detention Center in Brazil, Indiana.

Until recently, the Government has had a longstanding practice of treating aliens taken into custody while already present in the United States as subject to detention pursuant to the requirements of 8 U.S.C. § 1226. Section 1226(a) provides that detention is discretionary for aliens detained under the provision, so long they do not fall within any of the enumerated categories of "criminal aliens" listed in § 1226(c) for whom detention is mandatory. An alien subject to discretionary detention under § 1226(a) may request a hearing to obtain release on bond. *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)(1)). However, on September 5, 2025, the BIA issued its decision in *Yajure Hurtado*, in which it held in a departure from prior precedent and practice that all aliens who unlawfully enter the country are ineligible for release on bond. Specifically, the BIA concluded that such aliens are not subject to discretionary detention under § 1226(a) but instead are "applicants for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *Yajure Hurtado*, 29 I&N Dec. at 228–29.

Based on *Yajure Hurtado*, Gallegos Valenzuela was deemed ineligible for release on bond while awaiting removal proceedings and was therefore been denied a bond hearing before an Immigration Judge. Contending that *Yajure Hurtado* incorrectly interprets the relevant provisions of the INA and that his continued detention without a bond hearing violates the Due Process Clause of the Fifth Amendment, Gallegos Valenzuela petitioned this Court for a writ of habeas corpus and, specifically, a court order requiring Respondents Sam Olson, in his capacity as the Field Office Director of ICE's Chicago Field Office; Kristi Noem, in her capacity as Secretary of the U.S. Department of Homeland Security; the U.S. Department of Homeland Security; Pamela Bondi, the U.S. Attorney General; the Executive Office for Immigration Review; and an unidentified Warden Doe of the Broadview Detention Center to either immediately release Gallegos Valenzuela from detention or provide him with a bond hearing before an Immigration Judge. This Court previously added Brandon Crowley, Jail Administrator of the Clay County Detention Center, as an additional Respondent.

## DISCUSSION

A district court may grant a writ of habeas corpus to a petitioner who demonstrates that "[h]e is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3). Here, Gallegos Valenzuela challenges his detention insofar as he is deemed categorically ineligible for a bond hearing. In particular, he contends that he has been improperly treated as subject to mandatory detention under § 1225(b)(2)(A) when, in fact, his detention is discretionary under § 1226(a). Gallegos Valenzuela further argues that Respondents' refusal to provide him with a bond hearing under § 1226(a) violates his Fifth Amendment right to due process. For their response in opposition to Gallegos Valenzuela's habeas petition, Respondents adopt the arguments presented in their opposition brief in *H.G.V.U. v. Smith*, No. 25 CV 10931 (N.D. Ill.). Those arguments include that this Court lacks jurisdiction over the petition due to the

3

jurisdictional bars in 8 U.S.C. § 1252, as well as that foreign nationals who were never admitted to the United States do not qualify for bond.[1] The Court considers each argument in turn.

I.    **Jurisdiction**

According to Respondents, three provisions of the INA independently preclude this Court from exercising jurisdiction over Gallegos Valenzuela's habeas petition. First, Respondents invoke 8 U.S.C. § 1252(g), which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Seventh Circuit has explained that § 1252(g) "does not sweep broadly; only challenges to the three listed decisions or actions—to commence proceedings, adjudicate cases, or execute removal orders—are insulated from judicial review." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021). Here, Gallegos Valenzuela does not challenge any of those three specified actions; he challenges only his denial of a bond hearing. And "nothing in § 1252(g) precludes review of the decision to confine" an alien. *Carrera-Valdez v. Perryman*, 211 F.3d 1046, 1047 (7th Cir. 2000). The Court therefore rejects Respondents' contention that § 1252(g) deprives it of jurisdiction over Gallegos Valenzuela's claims.

Next, Respondents assert that this Court lacks jurisdiction under 8 U.S.C. § 1252(b)(9). That provision states with respect "to review of an order of removal" as follows:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this

---

[1] In adopting these arguments, Respondents acknowledge that every court in this District that has considered their merits in connection with a substantially similar habeas petition has rejected them. *E.g.*, *Miguel v. Noem*, No. 25 C 11137, 2025 WL 2976480 (N.D. Ill. Oct. 21, 2025); *H.G.V.U. v. Smith*, No. 25 CV 10931, 2025 WL 2962610 (N.D. Ill. Oct. 20, 2025); *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779 (N.D. Ill. Oct. 16, 2025).

>section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 . . . or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

However, § 1252(b)(9) does not preclude the exercise of jurisdiction over questions about whether "certain statutory provisions require detention without a bond hearing." *Jennings v. Rodriguez*, 583 U.S. 281, 292 (2018) (plurality opinion)[2]; *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("As we have said before, § 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." (internal quotation marks omitted)). And that is the crux of Gallegos Valenzuela's challenge here. Accordingly, § 1252(b)(9) presents no jurisdictional bar.

Finally, given that Gallegos Valenzuela argues that his detention should be discretionary rather than mandatory, Respondents argue that 8 U.S.C. § 1252(a)(2)(B)(ii) applies. In particular, § 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or Secretary of Homeland Security." But that provision does not preclude this Court's jurisdiction because Gallegos Valenzuela "does not challenge a discretionary bond denial by an [Immigration Judge] under § 1226(a). He has not been permitted such a hearing *because* Respondents maintain that he is mandatorily detained under § 1225 instead." *Ochoa Ochoa*, 2025 WL 2938779, at *4;

---

[2] While the *Jennings* decision's jurisdictional analysis was joined only by a plurality of Justices (a majority of Justices joined the rest of the opinion), the three Justices in dissent expressed the view that jurisdiction was "unaffected by 8 U.S.C. § 1252(b)(9), which by its terms applies only '[w]ith respect to review of an order of removal under [§ 1252(a)(1)].'" *Jennings*, 583 U.S. at 355 (Breyer, J., dissenting) (quoting 8 U.S.C. § 1252(b)). Thus, a total of six Justices took the position that § 1252(b)(9) does not preclude the exercise of jurisdiction over questions concerning detention without a bond hearing.

5

*see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("The aliens here . . . do not seek review of the Attorney General's exercise of discretion; rather, they challenge the extent of the Attorney General's authority under the . . . detention statute. And the extent of that authority is not a matter of discretion.").

In short, the Court finds that none of § 1252(g), § 1252(b)(9), or § 1252(a)(2)(B)(ii) preclude it from exercising jurisdiction over the petition.

## II. Ripeness

Having determined that it has jurisdiction over Gallegos Valenzuela's habeas petition, the Court turns to consider Respondents' contention that his challenge is not yet ripe. In particular, Respondents claim that Gallegos Valenzuela can only speculate that he will be detained without being provided a bond hearing. The Court disagrees that Gallegos Valenzuela's habeas claims are speculative. Respondents made clear their position that Gallegos Valenzuela has no right to a bond hearing because he is being mandatorily detained under § 1225 on the authority of the BIA's decision in *Yajure Hurtado*. By contrast, Gallegos Valenzuela contends that he is subject to discretionary detention under § 1226(a) and has a right to a bond hearing. Whether Gallegos Valenzuela must be considered detained under § 1225 or § 1226(a) is a question that became ripe immediately upon Gallegos Valenzuela's detention.

## III. Administrative Exhaustion

Rather than reach the merits of Gallegos Valenzuela's habeas claims, Respondents contend that this Court should require Gallegos Valenzuela first to request a bond hearing and then appeal any denial of that request to the BIA. Where, as here, "Congress has not clearly required exhaustion, sound judicial discretion governs." *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). Nonetheless, the general rule calls for "parties [to] exhaust prescribed administrative remedies before seeking

relief from the federal courts." *Id.* (quoting *McCarthy*, 503 U.S. at 144–45). But one instance in which exhaustion will be excused is where "appealing through the administrative process would be futile because the agency is biased or has predetermined the issue." *Id.* at 1016 (internal quotation marks omitted). That is the situation here given that the BIA has made clear in *Yajure Hurtado* that aliens like Gallegos Valenzuela are subject to mandatory detention and are ineligible to be released on bond, a determination that is binding on all Immigration Judges. Since "the BIA has predetermined the statutory issue" presented in Gallegos Valenzuela's habeas petition and "there is nothing to indicate the BIA would change its position," the Court will not require Gallegos Valenzuela first to exhaust his claims administratively. *Gonzalez*, 355 F.3d at 1019 (internal quotation marks omitted).

## IV. Detention Without Bond Hearing

The Court now turns to the merits of Gallegos Valenzuela's habeas claims. Gallegos Valenzuela contends that his mandatory detention under § 1225(b)(2) is predicated on an incorrect interpretation of the INA. Moreover, regardless of whether he is mandatorily or discretionarily detained, Gallegos Valenzuela contends that his detention without a bond hearing violates his Fifth Amendment right to due process.

### A. Statutory Basis for Detention

The provisions of the INA governing the detention of noncitizens pending removal proceedings are §§ 1225 and 1226. First, under § 1225(a)(1), any "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Relevant here, § 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien

7

shall be detained" for a removal proceeding under 8 U.S.C. § 1229a. 8 U.S.C. § 1225(b)(2)(A). Detention of aliens under § 1225(b)(2)(A) "is mandatory, and the noncitizen is not entitled to a bond hearing." *Miguel*, 2025 WL 2976480, at *4 (internal quotation marks omitted).

Section 1226(a) sets forth what the Supreme Court has described as the "default rule" for "the process of arresting and detaining [an alien present in the United States] pending their removal." *Jennings*, 583 U.S. at 288. With respect to detaining an arrested alien, § 1226(a) states in relevant part that, "[e]xcept as provided in subsection (c) and pending" a decision on removal, "the Attorney General . . . may continue to detain the arrested alien; and . . . may release the alien on . . . bond" or "conditional parole." 8 U.S.C. § 1226(a).[3] Aliens detained under § 1226(a), are entitled to "receive [a] bond hearing[] at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

As summarized by the Supreme Court, § 1225 "authorizes the Government to detain certain aliens seeking admission into the county" whereas § 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Id.* at 289. Under that articulation, the question of whether § 1225 or § 1226 governs Gallegos Valenzuela's detention would seem straightforward—Gallegos Valenzuela has been residing in the United States for over 21 years prior to the Government's initiation of removal proceedings. Indeed, before *Yajure Hurtado*, the Government's longstanding practice was to "apply[] § 1226(a) to inadmissible noncitizens already residing in the country." *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *9 (D. Ariz. Aug. 11, 2025). Yet the BIA abandoned that previous understanding in *Yajure Hurtado* and held that aliens present in the

---

[3] The exception in subsection (c) "carves out a statutory category of aliens who may **not** be released under § 1226(a)," namely any alien "who falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289 (citing 8 U.S.C. § 1226(c)(1)).

United States without admission remain applicants for admission subject to mandatory detention pending removal under § 1225(b)(2)(A) even when they have resided in the country for years. 291 I&N Dec. at 220. To resolve the instant habeas petition, the Court must determine which interpretation of the INA's detention provisions is correct.

When interpreting a statue, the Court first looks to its text "to ascertain its plain meaning." *United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020) (internal quotation marks omitted). "If the statutory language's plain meaning is unambiguous, [the Court's] inquiry ends there." *Id.* In this case, there is no dispute that Gallegos Valenzuela does not fall within any of the enumerated categories of criminal aliens for purposes of § 1226(c)'s exception. Gallegos Valenzuela claims that necessarily means § 1226(a)'s default rule for aliens present in the United States applies to his detention. Respondents, echoing *Yajure Hurtado*, contend that Gallegos Valenzuela constitutes an "applicant for admission" within the meaning of § 1225(a)(1), and therefore because he "is not clearly and beyond a doubt entitled to be admitted," he is subject to mandatory detention pending removal proceedings pursuant to § 1225(b)(2)(A).

The Court agrees that Gallegos Valenzuela constitutes an applicant for admission within the meaning of § 1225(a)(1). As noted above, § 1225(a)(1) deems the designation applicant for admission to include any alien present in the United States who has not been admitted. And "admitted" for purposes of that provision means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Nonetheless, "in the case of an alien who is an applicant for admission," mandatory detention under § 1225(b)(2)(A) applies only where "the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Thus, the critical question is whether an alien like Gallegos Valenzuela who has

9

long been present in the United States can nonetheless be considered "an alien *seeking* admission."

This Court joins the majority of district courts across the country in concluding that an alien who has been residing in the United States for an extended period of time is not "seeking admission" within the meaning of § 1225(b)(2)(A). *E.g.*, *Miguel*, 2025 WL 2976480, at *1 & n.1 (observing the numerous cases in which the district court held that "noncitizens already in the country are properly detained pursuant to § 1226(a) rather than § 1225(b)(2)(A)"). "[M]ost importantly, 'seeking' implies action and [noncitizens] who have been present in the country for years are not actively 'seeking admission.'" *Ochoa Ochoa*, 2025 WL 2938779, at *6; *see also Bait It v. McAleenan*, 410 F. Supp. 3d 874, 879 (N.D. Ill. 2019) ("Congress's 'choice of verb tense' informs 'a statute's temporal reach.'" (quoting *Carr v. United States*, 560 U.S. 438, 448 (2010))). Gallegos Valenzuela entered this country without inspection and, in the over 21 years since then, he has resided and started a family here. It is implausible to say that Gallegos Valenzuela is presently seeking "admission"—*i.e.*, "the **lawful entry** of the alien into the United States after inspection and authorization by an immigration officer," 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Moreover, § 1225(b)(2)(A) expressly refers to both an "applicant for admission" and "an alien seeking admission." Congress's use of those two different phrases within the same subsection strongly suggests that it meant to distinguish between an "applicant for admission" and "an alien seeking admission." *E.g.*, *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017) ("[W]e presume differences in language . . . convey differences in meaning."). And under Respondents' interpretation, all "applicants for admission" who are "not clearly and beyond a doubt entitled to be admitted" are subject to mandatory detention under § 1225(b)(2)(A), rendering the "seeking admission" language mere surplusage. *United States v.*

*Feeney*, 100 F.4th 841, 846 (7th Cir. 2024) ("According to the rule against surplusage, we aim to give independent meaning to the entire text so that no part is rendered meaningless.").

Notably, even as Respondents argue that Gallegos Valenzuela is an applicant for admission for whom detention is mandatory under § 1225(b)(2)(A), they do not argue that anything in the plain language of § 1226(a) excludes Gallegos Valenzuela from its scope. Yet § 1225(b)(2)(A) and § 1226(a) are "mutually exclusive—a noncitizen cannot be subject to both mandatory detention under § 1225(b)(2)(A) and eligible for bond under § 1226(a)." *Miguel*, 2025 WL 2976480, at *4. That Gallegos Valenzuela comfortably fits within the plain language of § 1226(a) while § 1225(b)(2)(A) reaches him only under a strained interpretation of the statutory language reinforces the conclusion that Gallegos Valenzuela is detained under the former provision. *See, e.g.*, *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *5 (W.D. Ky. Sept. 19, 2025) (describing the BIA's interpretation of § 1225 as "novel"). The Supreme Court evidently understood that to be the case, given its description of § 1226 as "governing the process of arresting and detaining [a] group of aliens pending their removal," including "aliens who were inadmissible at the time of entry." *Jennings*, 583 U.S. at 288. And until only very recently, the Government's practice was to apply § 1226(a) to such noncitizens. That "longstanding practice of the [G]overnment—like any other interpretative aid—can inform a court's determination of what the law is." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (internal quotation marks omitted).

For these reasons, the Court rejects Respondents' contention that § 1225(b)(2)(A) requires Gallegos Valenzuela's mandatory detention simply because he is a noncitizen who entered the United States without inspection. Instead, the Court adopts the previously long-standing interpretation of § 1225(b)(2)(A) and § 1226(a) and concludes that Gallegos Valenzuela

11

is detained under § 1226(a). Accordingly, Gallegos Valenzuela is entitled to a bond hearing as to his continued detention.

### B. Due Process

The Court further concludes that Gallegos Valenzuela has a Fifth Amendment due process right to a bond hearing. "[O]nce an alien enters the country . . . the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Government detention in immigration proceedings may violate that Clause except 'in certain special and narrow nonpunitive circumstances where a special justification outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Padilla v. Noem*, No. 25 CV 12462, 2025 WL 2977742, at *2 (N.D. Ill. Oct. 22, 2025) (quoting *Zadvydas*, 533 U.S. at 690).

Courts in this District have applied the three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976) in determining whether a noncitizen's detention without a bond hearing violates procedural due process. *E.g.*, *Ochoa Ochoa*, 2025 WL 2938779, at *7. Under that test, the following factors are balanced: "first, the private interest at stake; second, the risk of erroneous deprivation and the value, if any, of additional procedural safeguards; and third, the government's countervailing interests." *Miguel*, 2025 WL 2976480, at *7 (quoting *Simpson v. Brown County*, 860 F.3d 1001, 1006 (7th Cir. 2017)). Like other courts in this District that have addressed the question with respect to similarly situated petitioners, this Court finds that all three factors weigh in favor of Gallegos Valenzuela. *Padilla*, 2025 WL 2977742, at *3; *Miguel*, 2025 WL 2976480, at *7; *Ochoa Ochoa*, 2025 WL 2938779, at *7. First, Gallegos Valenzuela's "liberty is at stake." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *9 (E.D. Mich. Aug. 29, 2025). Second, given that Gallegos Valenzuela has no criminal history and there is no indication that he poses a danger to others, the risk of erroneous deprivation of his

liberty is high. And third, while "the Government has a legitimate interest in the prompt execution of removal orders which detention may facilitate[,] simply holding a bond hearing does not impair that interest." *Miguel*, 2025 WL 2976480, at *7 (internal quotation marks and citation omitted). Consequently, Gallegos Valenzuela's detention without a bond hearing violates due process.

V.      **Relief**

In his habeas petition, Gallegos Valenzuela requests that the Court order Respondents to immediately release Gallegos Valenzuela or provide a bond hearing for his removal proceedings within five days. The Court believes that the latter relief is proper, as the violation of Gallegos Valenzuela's right to procedural due process arises from his detention without bond rather than the detention itself. *Ochoa Ochoa*, 2025 WL 2938779, at *8. While the Court recognizes that Gallegos Valenzuela has a compelling case for his immediate release given that he has a child with serious medical concerns who depends on Gallegos Valenzuela for care, it remains for an Immigration Judge to make a release determination in the first instance. At the bond hearing, Respondents will have the burden of showing by clear and convincing evidence that Gallegos Valenzuela poses a risk of flight or a danger to the community such that his detention is necessary. *E.g.*, *id.* ("When granting immigration detainees' habeas petitions, an overwhelming consensus of courts have placed the burden on the [G]overnment to prove by clear and convincing evidence that the detainee poses a danger or flight risk." (internal quotation marks omitted)).

13

## CONCLUSION

For the foregoing reasons, Gallegos Valenzuela's petition for a writ of habeas corpus (Dkt. No. 1) is granted. Respondents are ordered (1) to provide Gallegos Valenzuela with a bond hearing pursuant to 8 U.S.C. § 1226(a) within five days of this order or (2) release him from custody under reasonable conditions of supervision. As this order grants all requested relief, the Clerk is directed to enter Judgment in favor of Gallegos Valenzuela.

ENTERED:

Dated: November 26, 2025

Andrea R. Wood
United States District Judge